(Surrogate's Court, Onondaga County.   January, 1915.)

1. WILLS ⊙⇒174—ALTERATION—DESTRUCTION OF PART.
    Under Decedent Estate Law (Consol. Laws, c. 13) § 34, governing the revocation and cancellation of wills, a person cannot alter a will by burning, tearing, canceling, obliterating, or destroying a part of it.
    [Ed. Note.—For other cases, see Wills, Cent. Dig. § 453;  Dec. Dig. ⊙⇒174.]

2. WILLS ⊙⇒174—ADMISSION TO PROBATE—MISSING PORTIONS.
    Where testatrix, about four months before her death, secured the custody of her will from her attorney, saying that she wanted to change it, and where after her death, it was found in a locked bureau drawer in her room, with one clause and part of another cut out, and it did not appear that, if she removed the missing portion, she did so with intent to cancel the entire instrument, the will as originally executed, not having been revoked, was entitled to admission to probate, though the substance of the missing portions was not proved, except by declarations of testatrix.
    [Ed. Note.—For other cases, see Wills, Cent. Dig. § 453;  Dec. Dig. ⊙⇒174.]

3. WILLS ⊙⇒344—PROBATE—MISSING PARTS—ADJUDICATION.
    In such case, there should be an accompanying adjudication that certain parts of the will had been cut out and were missing.
    [Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 800, 801;  Dec. Dig. ⊙⇒344.]

4. WILLS ⊙⇒303—PROBATE—MISSING PARTS—PROOF.
    It was not necessary that the missing parts should be proved by two witnesses, as required by Code Civ. Proc. § 1865;  such section applying only to cases where the whole will has been lost or destroyed, and not to cases where only a part is missing.
    [Ed. Note.—For other cases, see Wills, Cent. Dig. §§ 711–723;  Dec. Dig. ⊙⇒303.]

Proceedings on the probate of the last will and testament of Ursula A. Kent, deceased.   Probate decreed.

A. H. Cowie, of Syracuse, for executor.
Daniel A. Pierce, of Syracuse, for contestants.
Luke C. Horner, in pro. per.
Joseph B. Murphy, of Syracuse, for certain legatees.
Charles C. Cook, of Syracuse, for legatee Syracuse Home Ass'n.
Ray B. Smith and Joseph B. Murphy, both of Syracuse, for legatees King.

GLASS, S.   The decedent executed her will on the 9th day of March, 1911, and she died in July, 1913.   She was about 75 years old, and was possessed of property worth about $35,000.   Her husband was living when she made the will, but he died about a year before she did.   She left no descendants, and her nearest relatives were cousins.

The will was drawn by Mr. Charles S. Cook, and was executed by Mrs. Kent at Mr. Cook's office, and at the time of its execution was

⊙⇒For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

left in Mr. Cook's possession for safe-keeping. He kept it for her until four months before her death, when she called for it and took it away with her, saying that she wanted to change it. The next thing known about the will is that it was found in a locked drawer of a bureau in her room at her residence in Syracuse, in a mutilated condition.

The will was written upon four sheets of legal cap form, fastened at the top, and only the first page of eash half sheet was written upon. When found, as stated, after Mrs. Kent's death, a part of the third written page had been cut out of the middle of the page, the part cut out evidently being the sixth paragraph, or disposing clause, and likewise a part of the fifth written page, upon which was written the tenth, or. residuary, clause of the will, had been cut out in the middle of that page, so that what remains of the tenth clause reads as follows:

"Tenth. Subject to the life estate of my said husband, I dispose of the property so held in trust for him as follows, viz.: * * * 1 give, devise and bequeath a one fourth part thereof to the said Syracuse Home Association and I give, devise and bequeath a one fourth part thereof to the Onondaga County Orphan Asylum located on East Genesee street, Syracuse, New York."

The first paragraph of the will directs the payment of debts; the second gives $250 to a cemetery association; the third gives $500 to the Methodist Episcopal Church at North Manlius; the fourth gives $500 to the Syracuse Home Association; the fifth bequeaths $600 to each of six children of James Adams, her cousin. The seventh clause gives $500 to Luke C. Horner; the eighth gives her husband all her household effects, and the ninth clause creates a trust of the rest of her property during the life of her husband, giving him the income therefrom during his life; and the eleventh clause appoints the executor and trustee.

The parts of the will cut out, therefore, are the entire sixth paragraph and so much of the tenth paragraph as disposed of one-half of the remainder of the estate after the life estate of the husband. Two of Mrs. Kent's relatives, not remembered in the will, contest the probate of the will upon the ground that it was revoked by the testatrix in her lifetime by the mutilation above described, which they contend amounted to a cancellation and destruction of the whole instrument.

[1] The law of this state governing the revocation and cancellation of wills provides that:

"No will in writing, except in the cases hereinafter mentioned, nor any part thereof, shall be revoked, or altered, otherwise than by some other will in writing, or some other writing of the testator, declaring such revocation or alteration, and executed with the same formalities with which the will itself was required by law to be executed; or unless such will be burnt, torn, canceled, obliterated or destroyed, with the intent and for the purpose of revoking the same, by the testator himself, or by another person in his presence, by his direction and consent." Decedent Estate Law, § 34.

The exceptions referred to in the statute relate to revocation by subsequent marriage or birth of issue. Under this law, as interpreted by the courts, a person may revoke his will by burning, tearing, can-

celing, obliterating, or destroying it, provided the act is done with the intent and for the purpose of revoking the whole will; but he cannot alter or change the will, as made, by burning, tearing, canceling, obliterating, or destroying a part of it.

[2, 3] It is not certain, from the circumstances and facts proved in this case, that it was Mrs. Kent herself who cut out from her will the parts which are missing; but, assuming that it was her own act, there is nothing in the circumstances attending the act, or in the nature of the act, from which any conclusion can be reached that she intended to cancel the whole instrument, or that she had anything in mind beyond altering the will by striking out some of its provisions.

The will, therefore, as originally executed, was never revoked, and is still her will, and if the contents of the missing parts of the will had been legally and adequately proved in this proceeding, it would have been admitted to probate in its entirety; and in any event, even if the substance of the missing portions has not been proved, the paper which remains and is presented for probate must be admitted to probate, because it is still her will and it has never been revoked. In such case, of course, there should be an accompanying adjudication of the fact that certain parts of the will had been cut out and are missing. It is not believed that it is the law that the whole will must be proved or none of it.

The only evidence in the proceeding bearing upon the question of what the missing provisions of the will were is as follows: Mrs. Margaret Gibbs, a neighbor of Mrs. Kent, testifies that in May or June, 1911, two or three months after the will was executed, Mrs. Kent told her that there were people jealous of Mr. King because they thought he was going to get some of her money, and she said he would get it because she thought he deserved it, and that she left him $2,500, and his brother the same, and after Mr. Kent's death Ross King and Bruce King were to have each one-fourth of what was left after Mrs. Kent died; that she had made a will to that effect; that those provisions were in the will; and that afterward, on four or five other occasions, down to as late as a month before her death, she mentioned substantially the same fact; and only a week before her death, the day that she was taken sick, Mrs. Kent said that Ross King was going to get rewarded for what he had done for her; that Ross King and Bruce King were going to get the most of her money when she was through with it; that she wanted them to have it. ·

This testimony of Mrs. Gibbs was given at a hearing held on the 14th day of January, and no objection was made at the time of its reception. It was given at the outset of her examination, and she was cross-examined at considerable length by the contestants' counsel, another witness examined by both sides, and the proponent rested, and the hearing was adjourned two weeks. On the adjourned day the contestants' counsel made a motion to strike out Mrs. Gibbs' testimony, above recited, on the ground that the evidence was incompetent and no part of the res gestæ.

The court denied the motion for the time being, reserving the right to grant the motion before disposing of the case if it should see fit to

do so. The court felt at the time, and still feels, that the contestants waited too long before raising any objection to Mrs. Gibbs' testimony, and the denial of the motion to strike out, made at the time, should remain as the proper disposition of the matter. In this case, substantial justice to all the parties, as it seems to me, is more likely to be promoted by allowing the evidence as to the declarations of Mrs. Kent as to the contents of the missing parts of the will to remain in the case rather than by striking it out.

Mrs. Gibbs' testimony is corroborated in part by that of Mr. Cook, who drew the will, who says that there was a provision in the sixth clause for a Mr. Ross King—as he recalls, a provision by which she gave to Ross King a certain specified portion of her estate. He does not recollect the amount, but as he recalls it was in the thousands. The court is satisfied from this testimony that the sixth clause of the will contained a bequest of $2,500 to Ross King and a like amount to Bruce King; and that the missing portion of the tenth clause contained a bequest and devise to each of them of one-fourth of the remainder of the estate mentioned in the ninth and tenth clauses of the will.

[4] It was not necessary that the provisions of the will which were contained in the missing portions should be proved by two witnesses, as required by section 1865 of the Code of Civil Procedure. All of article 3 of title 3 of chapter 15 of the Code, of which section 1865 is a part, evidently applies only to cases where the whole will has been lost or destroyed, and not to cases where, as in this, only a part is missing.

A decree should be made, therefore, admitting to probate the paper presented and the missing portions thereof, with proper adjudication of the substance of the missing parts of the will, as above indicated.

Probate decreed.